**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF FLORIDA**

**TAMPA DIVISION**

MAY 1 2026 AM8:40
FILED - USDC - FLMD - TPA

AIREONNA BAILEY,

    Plaintiff,

v.

TRIAGE PARTNERS, LLC,

    Defendant.

Case No.: 8:26-Cv-1282-MSS-NHA

**JURY TRIAL DEMANDED**

---

# COMPLAINT FOR EMPLOYMENT DISCRIMINATION AND RETALIATION

Plaintiff Aireonna Bailey, appearing pro se, sues Defendant Triage Partners, LLC, and alleges:

## I. INTRODUCTION

1.     This is an action for employment discrimination and retaliation arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 et seq.

2.     Plaintiff, an African American woman and the only Black woman in Defendant's Human Resources department, reported a male field supervisor's repeated unwelcome conduct on January 10, 2025. Defendant's own Human Resources Director substantiated Plaintiff's



allegations in writing on January 18, 2025. Within nineteen days of the complaint, Plaintiff received a sharply lowered annual performance review. Within twenty-eight days, Defendant issued Plaintiff a Final Warning that expressly faulted her for using Defendant's open-door policy. After Plaintiff formally complained of retaliation and race discrimination on April 8, 2025, Defendant conducted a perfunctory internal investigation that produced a conclusory 'no evidence' finding on July 2, 2025. Approximately five weeks later, on August 8, 2025, Defendant terminated Plaintiff's employment under the stated rationale of 'company reorganization.' Within days, Defendant publicly reposted Plaintiff's position for hire.

## II. JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).

4.      This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) because they arise from the same nucleus of operative fact as the federal claims.

5.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred at Defendant's principal place of business in Hillsborough County, Florida, which lies within the Tampa Division of the Middle District of Florida.

## III. PARTIES

6.      Plaintiff Aireonna Bailey is a Black woman residing in Pasco County, Florida. At all relevant times, Plaintiff was an 'employee' of Defendant within the meaning of 42 U.S.C. § 2000e(f) and Fla. Stat. § 760.02(10).

7.      Defendant Triage Partners, LLC is a foreign limited liability company organized under the laws of the State of Delaware and registered to transact business in Florida as Document No. M23000009027, with its principal place of business at 205 S. Hoover Boulevard, Suite 401, Tampa, Florida 33609. At all relevant times, Defendant was an 'employer' within the meaning of 42 U.S.C. § 2000e(b) and Fla. Stat. § 760.02(7), and employed more than two hundred (200) employees for each working day in each of twenty or more calendar weeks during the relevant calendar years.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.      On August 21, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ('EEOC'), Charge No. 511-2025-03621, alleging discrimination based on race, sex, and retaliation. The charge was dual-filed with the Florida Commission on Human Relations.

9.      The EEOC issued a Notice of Right to Sue, which Plaintiff received on April 29, 2026. A true and correct copy is attached as Exhibit A. Plaintiff files this Complaint within ninety days of receipt.

10.      More than 180 days have elapsed since the dual-filing of Plaintiff's charge with the Florida Commission on Human Relations without final agency action. Pursuant to Fla. Stat. § 760.11(8), Plaintiff is entitled to bring her Florida Civil Rights Act claims in this Court.

11.      Plaintiff has exhausted all administrative remedies required as a precondition to filing suit.

## V. FACTUAL ALLEGATIONS

**A.   Plaintiff's Employment with Defendant**

12.   On February 5, 2024, Defendant hired Plaintiff as an Operations Specialist in its Tampa, Florida office.

13.   Throughout her employment with Defendant, Plaintiff was the only Black woman in Defendant's Human Resources department.

14.   Plaintiff's responsibilities included serving as the cross-functional liaison assisting newly hired technicians with all aspects of onboarding, including the internal background check process, customer onboarding and credentialing, completion of pre-hire paperwork, and coordination with hiring managers and IT for new hires' first day.

15.   During her first year of employment, Plaintiff successfully onboarded over 400 technicians.

16.   Plaintiff's first direct supervisor was Lauren Cronin, Defendant's Human Resources Director.

17.   Beginning in or around July 2024, Tom Grimm, Defendant's Talent Acquisition Manager, became Plaintiff's direct supervisor. Cronin remained Plaintiff's department leader.

**B.   The Sex-Based Harassment by John Williams**

18.   Beginning on Plaintiff's first day of employment in February 2024, John Williams, a male field supervisor employed by Defendant, engaged in unwelcome and persistent conduct toward Plaintiff.

19.   The conduct included, but was not limited to:

a. On Plaintiff's first day, when other staff stepped out of the room, Williams initiated personal conversation with Plaintiff, told her he was divorced with children, asked whether she was working from home, told her she should 'negotiate' to do so, and provided her with his personal cellular phone number for the stated purpose of giving her 'tips' on how to negotiate working from home;

b. Williams later remarked to Plaintiff that he had noticed she had not used his personal phone number;

c. Williams repeatedly invited Plaintiff to lunch, which she declined;

d. Williams frequently visited Plaintiff's desk to engage her in personal conversation;

e. Beginning on March 22, 2024 and continuing through January 10, 2025, Williams asked Plaintiff—repeatedly and on a recurring basis—whether she was working from home or when she would be working from home;

f. Williams telephoned Plaintiff at work more frequently than any other supervisor and for matters that could reasonably have been handled by Microsoft Teams chat message; and

g. On January 10, 2025, Williams sent Plaintiff a Microsoft Teams message asking whether she was working from home and continuing to ask what day she works from home.

20. Williams's conduct was unwelcome to Plaintiff, made her uncomfortable, and caused her workplace anxiety.

21. Williams did not direct comparable conduct toward male coworkers.

**C.    Plaintiff's Initial Protected Complaint and Defendant's Written Substantiation**

22.   On or about January 10, 2025, Plaintiff informally reported Williams's conduct to her direct supervisor, Tom Grimm.

23.   Grimm reported the complaint to Cronin, who undertook an investigation.

24.   On January 15, 2025, Cronin interviewed Tom Grimm at 9:30 a.m., Plaintiff at 10:30 a.m., and John Williams the following day, January 16, 2025.

25.   By email dated January 18, 2025, Cronin wrote Plaintiff that she had been *'able to substantiate all of your claims,'* and confirmed that Williams 'has been spoken to and knows not to behave in any way that could be conceived as retaliatory.'

26.   Cronin's investigation notes confirmed that, by Defendant's own account, Williams 'occasionally asks Tom if he is working remotely and invited him to lunch.' This established a pre-existing personal connection between Williams and Plaintiff's then-direct supervisor, Grimm.

27.   Following the investigation, Defendant assigned Plaintiff to a workplace harassment training—the same training assigned to Williams. Plaintiff inquired in writing on January 24, 2025 why she was assigned the same training as the offending employee. Cronin responded that the training was for 'educational purposes.'

## D.   The Retaliatory Performance Review

28.   On January 16, 2025—six days after Plaintiff's protected complaint—Tom Grimm issued the first 'documented coaching' of Plaintiff via Microsoft Teams.

29.   On or around January 22, 2025, Defendant's Chief Executive Officer, James Han, met with Plaintiff and assured her that she was free to come directly to him with any concerns related to her job, without going through Cronin or Grimm.

30. On January 29, 2025—nineteen days after Plaintiff's protected complaint—Tom Grimm issued Plaintiff's annual performance review. Grimm scored Plaintiff '2' (Sometimes Met Expectations) on three of the six core job functions, including the function of acting as 'the primary point-of-contact for candidates in the onboarding process,' notwithstanding Plaintiff's documented onboarding of more than 400 technicians during the year.

31. On or about January 31, 2025, Plaintiff sent Tom Grimm an email requesting clarification of the scores, with extensive supporting data. Plaintiff copied Lauren Cronin and blind-copied CFO Daniela Yoder and CEO James Han, in reliance on Han's January 22 invitation.

32. Tom Grimm did not respond to Plaintiff's email.

**E.    The Retaliatory Final Warning**

33. On February 4, 2025, Cronin documented additional 'coaching' of Plaintiff via Microsoft Teams.

34. On February 7, 2025—twenty-eight days after Plaintiff's protected complaint—Cronin convened a meeting with Plaintiff. Cronin opened the meeting by telling Plaintiff that she 'would have rated [Plaintiff] lower' than Grimm did.

35. At that meeting, Cronin issued Plaintiff a written 'Final Warning,' threatening termination if 'the conduct or performance issues identified above persist.'

36. The Final Warning expressly cited Plaintiff's prior escalation to the CFO regarding a scheduling matter, stating: *'Aireonna proceeded to escalate her request to our CFO, undermining my decision as her manager and as the department head of HR.'* The Final Warning thereby penalized Plaintiff for using Defendant's open-door policy.

37. The Final Warning further reached back to August 2024 to characterize Plaintiff's prior, never-disciplined conduct as evidence of a long-standing problem.

38. The Final Warning included a directive that Plaintiff exhibit *'zero retaliatory behavior towards her peers who [Cronin] suspects were forthcoming with management in their challenges about working alongside [Plaintiff].'*

39. Plaintiff signed the Final Warning under written protest, stating in her own hand: *'I don't agree with anything in this document. Specifically, my quality of work...nothing I've been shown today speaks to the work I've done here.'*

**F. Pre-Litigation Negotiations and Defendant's Lowball Settlement Offer**

40. Following the issuance of the Final Warning, on or about late February 2025, Plaintiff retained counsel who sent Defendant a written demand letter alleging unlawful discrimination and retaliation. Defendant's counsel acknowledged receipt of the demand letter on or about February 25, 2025, and represented Defendant in subsequent communications. Counsel for Plaintiff and counsel for Defendant conferred by telephone in March 2025. Defendant declined to resolve Plaintiff's claims and offered only one week of severance pay in exchange for Plaintiff's complete release of all employment claims, which Defendant's counsel characterized as the amount Defendant offers to employees terminated 'through no fault of their own.' The pre-litigation negotiations did not resolve the dispute, and Plaintiff's pre-litigation counsel withdrew on March 28, 2025.

**G. Plaintiff's April 2025 Formal Complaints of Retaliation, Race Discrimination, and Compliance Violations**

41.    On April 7, 2025, Plaintiff sent Defendant's Chief Financial Officer, Daniela Yoder, a written letter invoking Defendant's open-door policy.

42.    In her letter, Plaintiff:

a.   Identified the Final Warning's 'undermining' reference as retaliation for her protected complaint about Williams;

b.   Reported that, as the only African American woman in the department, she was being held to a different and discriminatory performance standard than her non-Black colleagues;

c.   Described the workplace as a 'hostile work environment' and reported that she had been experiencing 'elevated stress, fearing termination if I do not perform flawlessly'; and

d.   Additionally raised concerns regarding compliance with Defendant's customer's pre-employment drug screening procedures.

43.    CFO Yoder acknowledged receipt of Plaintiff's letter the same day, April 7, 2025.

44.    On April 8 or 9, 2025, Plaintiff completed and submitted Defendant's formal Discrimination/Harassment/Retaliation Complaint Form, identifying Cronin and Grimm as the individuals engaged in alleged discrimination, harassment, and retaliation, identifying race and her prior harassment complaint as the bases, and identifying Brenda Stewart, Defendant's Senior Human Resources Generalist, as a person who had observed differential treatment of Plaintiff. Throughout the period of Plaintiff's employment, Plaintiff also discussed the alleged conduct contemporaneously with Stewart in her capacity as Senior Human Resources Generalist, thereby providing Defendant's Human Resources function with ongoing notice of Plaintiff's concerns.

**H.    Defendant's Inadequate Investigation and the Termination**

**45.**    Yoder and Han conducted an investigation purportedly addressing Plaintiff's April complaint. The investigators interviewed Plaintiff, Grimm, Cronin, and Senior Human Resources Generalist Brenda Stewart. On information and belief, Stewart corroborated Plaintiff's account during her interview.

**46.**    By email dated July 2, 2025, Yoder informed Plaintiff: *'We did not find any evidence of the claims you made on April 9th.'* Yoder further informed Plaintiff: *'I cannot share with you the investigation documents due to privacy concerns of other employees.'*

**47.**    Notwithstanding Plaintiff's specific written requests, Defendant:

    a.  Did not rescind the Final Warning;

    b.  Did not correct the January 29, 2025 performance review;

    c.  Did not remove Plaintiff from the supervision of Tom Grimm or the indirect supervision of Lauren Cronin; and

    d.  Refused to provide Plaintiff with any portion of the investigation file.

**48.**    On August 8, 2025—approximately four months after Plaintiff's formal complaint of retaliation and race discrimination, and approximately five weeks after Yoder's July 2 finding—Defendant terminated Plaintiff's employment.

**49.**    Defendant stated that the reason for the termination was 'company reorganization.'

**50.**    Within days of Plaintiff's termination, Defendant publicly reposted the Onboarding Specialist position for hire. Plaintiff preserved evidence of the posting on the date she observed it.

**51.** Defendant's stated rationale of 'company reorganization' is pretextual, as evidenced by the following:

    a. The same position Plaintiff had occupied was reposted for the same duties within days of her termination, with no material change in scope or organizational structure;

    b. Defendant's August 8, 2025 termination notice conditioned payment of severance on Plaintiff's execution of a 'Confidential Severance Agreement and General Release of Claims,' a draft of which Defendant provided to Plaintiff and which would have released, among other things, Plaintiff's claims under Title VII, the Florida Civil Rights Act, and 42 U.S.C. § 1981; Plaintiff did not sign; and

    c. The conditioning of severance on the release of discrimination, retaliation, and harassment claims is inconsistent with a neutral reduction in force and supports an inference that Defendant anticipated litigation arising from the conduct alleged herein.

## I.    Damages and Mitigation

**52.** Plaintiff secured comparable employment with another employer beginning August 18, 2025—ten days after her termination by Defendant. Plaintiff has thereby mitigated her damages with respect to back pay.

**53.** Plaintiff has been an established patient of a licensed psychologist who provided her with ongoing mental-health care prior to and throughout her employment with Defendant. During her period of employment with Defendant, Plaintiff attended approximately forty-one therapy sessions, during which, on numerous occasions, she discussed the workplace conduct alleged herein and the resulting workplace anxiety, stress, and fear of termination. Plaintiff's treatment records contemporaneously document the emotional impact of Defendant's conduct on Plaintiff.

54.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages including lost wages and benefits during her period of unemployment; any wage and benefits differential between her former and current employment; medical and therapeutic expenses; emotional distress, mental anguish, and humiliation; and reputational harm.

### COUNT I Title VII Retaliation — 42 U.S.C. § 2000e-3(a)

55.    Plaintiff incorporates and re-alleges paragraphs 1 through 55 as though fully set forth herein.

56.    Plaintiff engaged in protected activity within the meaning of 42 U.S.C. § 2000e-3(a) by, among other things:

   a.  Reporting Williams's unwelcome sex-based conduct to Tom Grimm on or about January 10, 2025 (opposition activity);

   b.  Participating in Defendant's investigation of that complaint between January 15 and January 24, 2025 (participation activity);

   c.  Sending CFO Yoder a written letter on April 7, 2025 alleging race-based and retaliation-based mistreatment; and

   d.  Filing Defendant's formal written Discrimination/Harassment/Retaliation Complaint Form on April 8 or 9, 2025.

57.    Defendant subjected Plaintiff to materially adverse employment actions, including but not limited to:

   a.  The January 16, 2025 documented coaching;

   b.  The January 29, 2025 sub-expectations performance review;

   c.  The February 7, 2025 Final Warning expressly threatening termination;

   d.  The continued supervisory relationship with the persons against whom Plaintiff had complained;

e.  The conclusory July 2, 2025 dismissal of Plaintiff's April complaint without remediation; and

f.  The August 8, 2025 termination.

58.    There is a but-for causal connection between Plaintiff's protected activity and the adverse actions, established by, among other evidence:

a.  Temporal proximity (six days between the complaint and the first documented coaching; nineteen days between the complaint and the lowered review; twenty-eight days between the complaint and the Final Warning; and approximately four months between Plaintiff's formal April complaint and her termination, in a continuous course of conduct);

b.  Direct evidence of retaliatory animus, including the Final Warning's express criticism of Plaintiff for using Defendant's open-door policy and Cronin's contemporaneous statement that she 'would have rated [Plaintiff] lower' than Grimm did; and

c.  Pretext, including reliance on stale, never-previously-disciplined conduct from August 2024; the contradiction between Plaintiff's documented onboarding throughput and the sub-expectations scores; and the contradiction between Defendant's stated 'reorganization' termination rationale and its immediate reposting of Plaintiff's position.

59.    As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered the damages described above.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendant on Count I and the relief set forth in the Prayer for Relief.

## COUNT II Title VII Race Discrimination — 42 U.S.C. § 2000e-2(a)

60.    Plaintiff incorporates and re-alleges paragraphs 1 through 55 as though fully set forth herein.

61.    Plaintiff is African American and is a member of a class protected under Title VII.

62.    Plaintiff was qualified for her position as Operations Specialist. She onboarded over 400 technicians during the year preceding her January 29, 2025 review and was rated 'Sometimes Exceeded Expectations' on her overall Adherence to Core Values composite.

63.    Plaintiff suffered adverse employment actions as set forth in Count I, including the lowered performance review, the Final Warning, and ultimately termination.

64.    On information and belief, similarly-situated non-Black employees were not subjected to retroactive discipline based on stale, never-previously-disciplined conduct; were not held to a different and higher 'quality' standard than was applied uniformly across the department; and were not terminated under the rationale of 'reorganization' while their positions were immediately reposted for hire.

65.    As the only African American woman in Defendant's Human Resources department, Plaintiff was held to standards different from and more stringent than those applied to her non-Black colleagues, supporting an inference of intentional race discrimination.

66.    Defendant's stated reasons for the adverse actions are pretextual, as set forth above.

67.    As a direct and proximate result of Defendant's race discrimination, Plaintiff has suffered the damages described above.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendant on Count II and the relief set forth in the Prayer for Relief.

**COUNT III Title VII Sex-Based Hostile Work Environment — 42 U.S.C. § 2000e-2(a)**

68.    Plaintiff incorporates and re-alleges paragraphs 1 through 55 as though fully set forth herein.

69.    Plaintiff is a woman and is a member of a class protected under Title VII.

70.    Plaintiff was subjected to unwelcome conduct based on her sex by John Williams, a male field supervisor employed by Defendant, beginning on her first day of employment in February 2024 and continuing through January 10, 2025.

71.    The conduct was based on Plaintiff's sex, as evidenced by its personal nature (provision of a personal phone number, repeated lunch invitations, and persistent inquiries into her work-from-home schedule); the fact that Williams did not direct comparable conduct toward male coworkers; and the supervisor's repeated solicitations of Plaintiff in contexts unrelated to legitimate business needs.

72.    The conduct was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment, both objectively and as Plaintiff subjectively perceived it. The conduct continued for approximately ten months and ceased only after Plaintiff complained.

73.    Defendant is liable for the harassment because (a) Williams was a supervisory employee who exercised authority that affected the conditions of Plaintiff's employment, and/or (b) Defendant knew or should have known of the harassment and failed to take immediate and

adequate corrective action, including by exposing Plaintiff to subsequent retaliation as alleged in Count I.

74.    As a direct and proximate result of the sex-based hostile work environment, Plaintiff has suffered the damages described above.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendant on Count III and the relief set forth in the Prayer for Relief.

## COUNT IV Race Discrimination and Retaliation — 42 U.S.C. § 1981

75.    Plaintiff incorporates and re-alleges paragraphs 1 through 55 as though fully set forth herein.

76.    42 U.S.C. § 1981 guarantees all persons the same right 'to make and enforce contracts' as enjoyed by white citizens, including the right to be free from race discrimination in the making, performance, modification, and termination of an employment contract.

77.    Plaintiff is African American and is protected by § 1981.

78.    Defendant intentionally discriminated against Plaintiff on the basis of her race in the terms and conditions of her employment, including in performance evaluation, discipline, and termination.

79.    Defendant retaliated against Plaintiff for opposing race-based discrimination, including her April 7-9, 2025 written complaints. See *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (recognizing retaliation claims under § 1981).

**80.**    Defendant's intentional race-based conduct was a but-for cause of the adverse actions Plaintiff suffered. See *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009 (2020).

**81.**    As a direct and proximate result of Defendant's violations of § 1981, Plaintiff has suffered the damages described above.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendant on Count IV and the relief set forth in the Prayer for Relief.

### COUNT V Florida Civil Rights Act — Fla. Stat. § 760.10

**82.**    Plaintiff incorporates and re-alleges paragraphs 1 through 55 as though fully set forth herein.

**83.**    The Florida Civil Rights Act of 1992, Fla. Stat. § 760.10, prohibits employment discrimination based on race and sex and prohibits retaliation against an employee who opposes any practice that is an unlawful employment practice or who participates in any investigation, proceeding, or hearing under the Act.

**84.**    For the reasons alleged in Counts I, II, and III, Defendant violated Fla. Stat. § 760.10(1) and § 760.10(7) by discriminating against Plaintiff on the basis of race and sex and by retaliating against her for engaging in protected activity.

**85.**    As a direct and proximate result of Defendant's violations of Fla. Stat. § 760.10, Plaintiff has suffered the damages described above.

**WHEREFORE,** Plaintiff demands judgment in her favor and against Defendant on Count V and the relief set forth in the Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Aireonna Bailey respectfully requests that this Court enter judgment in her favor and against Defendant Triage Partners, LLC, and grant the following relief:

**A.** A declaratory judgment that Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Florida Civil Rights Act;

**B.** A permanent injunction prohibiting Defendant from engaging in further retaliation or discrimination against Plaintiff and ordering Defendant to expunge from Plaintiff's personnel file the February 7, 2025 Final Warning, the January 29, 2025 performance review, and the documented coaching entries of January 16 and February 4, 2025;

**C.** Reinstatement to her former position with full seniority and benefits, or in the alternative, front pay and benefits in an amount to be determined at trial;

**D.** Back pay and lost benefits, with prejudgment interest, in an amount to be determined at trial;

**E.** Compensatory damages, including damages for emotional distress, mental anguish, humiliation, and out-of-pocket medical and therapeutic expenses, in an amount to be determined at trial;

**F.** Punitive damages under 42 U.S.C. § 1981a, 42 U.S.C. § 1981, and the Florida Civil Rights Act, in an amount to be determined at trial;

**G.** Costs of suit;

**H.** Attorney's fees, in the event Plaintiff retains counsel, pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, and Fla. Stat. § 760.11(5);

**I.** Pre-judgment and post-judgment interest as authorized by law; and

**J.** Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable, pursuant to Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.

Respectfully submitted,

Dated: 5-1-26

Aireonna Bailey, Plaintiff Pro Se

7221 Bridgeview Drive

Wesley Chapel, Florida 33545

Telephone: (813) 464-9411

Email: aireonna.bailey@gmail.com

## CERTIFICATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

Pursuant to Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that this Complaint (1) is not being presented for any improper purpose; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) this Complaint otherwise complies with the requirements of Rule 11.

Aireonna Bailey, Plaintiff Pro Se

Date: 5-1-26